UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ISAIAH S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO.  3:21cv138 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for  Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2023.

2. The claimant has not engaged in substantial gainful activity since March 7, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: right shoulder degenerative joint disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform a range of light work (20 CFR 404.1567(b)) defined as follows: sitting six hours during an eight-hour workday; standing and walking six hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently, but no lifting or carrying more than five pounds with the right upper extremity; occasionally climbing ramps and stairs, stooping, kneeling, and crouching; no crawling; no climbing ladders, ropes, or scaffolds; frequent fingering and handling with the dominant right upper extremity; occasional reaching with the dominant right upper extremity; no vibrating tools; and frequent flexion, extension, and rotation of the neck.

6. The claimant is unable to perform any of his past relevant work (20 CFR 404.1565).

7. The claimant was born on February 11, 1981 and was 36 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy he can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 7, 2017, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 30-37).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on October 6, 2021. On December 16, 2021, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on January 10, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff was born in 1981 (Tr. 35), has a GED (Tr. 47), and has past relevant work as a

coater operator, gluer, and material handler. (Tr. 35).

As Plaintiff's arguments relate to his mental impairments, only evidence relating to his mental health will be discussed here. On November 2, 2015, Plaintiff was admitted to the Acute Care Unit at Four County Counseling Center (FCCC) (Tr. 653-60). This was his third admission to the unit since 2005 and the tenth since 1995 (Tr. 653). Plainiff told psychiatrist Kathleen Miller, M.D., that he had had a "breakdown." (*Id*.). He reported being troubled by flashbacks of abuse from his father. (*Id*.). Plaintiff said that when he was a child, his father tied him to a chair and beat him. (*Id*.). He watched his mother and siblings go through the same experience. (*Id*.). Now, he admitted to being very depressed, anxious, fearful, and angry, and said he had suicidal thoughts as well as homicidal thoughts toward his father. (*Id*.). He admitted to frequent use of cannabis and cocaine. (*Id*.).

Dr. Miller wrote that Plaintiff was "very guarded today." (Tr. 655). He was tearful, dysphoric, anxious, and irritable. (*Id*.). His affect was dysthymic. (*Id*.). On the mental status examination, he remembered three of three words immediately and after five minutes. (*Id*.). Dr. Miller wrote that Plaintiff's insight was good but his judgment was poor. (Tr. 656).

Dr. Miller's primary diagnosis for Plaintiff was major depressive disorder, recurrent, severe with psychotic symptoms. (Tr. 659). She also diagnosed alcohol use, cannabis use, personality disorder with cluster B traits, and post-traumatic stress disorder. (*Id*.). Plaintiff responded well to treatment (Tr. 692) and was discharged on November 7, 2015. (Tr. 694).

Plaintiff returned to FCCC on January 11, 2016, for a medication review (Tr. 443-45) and on February 12, 2016, for a therapy session. (Tr. 447). He was discharged on May 20, 2016, because he was non-compliant with treatment (Tr. 449), but he returned to FCCC five days later

5

because he wanted to get back into therapy and back on medication. (Tr. 451). At the intake that day, May 25, 2016, his mental status examination was normal except that his affect was flat, his behavior was restless, and his mood was anxious and depressed. (Tr. 458). He was subsequently discharged from therapy on December 2, 2016, for non-compliance with therapy. (Tr. 464).

In March 2018, Plaintiff went back to FCCC's Acute Care Unit for another psychiatric evaluation. (Tr. 477-84). He said there were times when he would be awake for four days and would be afraid to leave his home. (Tr. 477). He said his depression had increased over the past eight months. (*Id*.). He said that when he was awake, he had racing thoughts, tangential speech, was very talkative, and his girlfriend had to redirect him to the topic of conversation. (*Id*.). He said that he shopped only on Mondays or Tuesdays at 1:00 a.m. (*Id*.). He said that he believed that he was always being watched at night, despite having covered the windows and having a privacy fence. (*Id*.). He had a poor appetite, he was eating only one small meal per day, and food did not taste good. (*Id*.). He had weighed 190 pounds but was now down to 167 pounds. (*Id*.).

Psychiatrist Kathleen Miller, M.D., wrote that on mental status examination, Plaintiff's thought process was logical but his thought content was about suspicion (R. 479). Under "mood," Dr. Miller wrote, "loss of energy, tearfulness, dysphoric, feeling worthless, irritable, loss of interest/pleasure." (Tr. 480). Plaintiff was able to remember three of three words immediately and after five minutes. (*Id*.). Dr. Miller wrote that Plaintiff acknowledged the presence of illness but also said that Plaintiff had "poor judgment." (*Id*.). Dr. Miller diagnosed schizoaffective disorder, bipolar type; post-traumatic stress disorder; alcohol dependence; and cannabis dependence. (Tr. 484).

Plaintiff's initial claim for DIB was decided on May 16, 2019. (Tr. 255-62). At that time, Plaintiff's date last insured was September 30, 2018. (Tr. 255).

Indiana DDB psychologist William Shipley, Ph.D., opined that Plaintiff had mild limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 260). Dr. Shipley did not otherwise provide his opinions of Plaintiff's psychological abilities and limitations.

Plaintiff's request for reconsideration was decided on July 17, 2019. (Tr. 264-72). Indiana DDB psychologist B. Randal Horton, Psy.D., opined that Plaintiff had mild limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 270). Dr. Horton did not otherwise provide his opinions of Plaintiff's psychological abilities and limitations.

In support of remand, Plaintiff argues that the ALJ failed to include his mental limitations in the RFC.[2] All limitations that an ALJ finds for a claimant must be included in the RFC and the hypothetical questions, even those that are not severe. *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(2), 404.1545(e). *See also*, Social Security Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'") The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at step four and five is fundamental to

---

[2] Plaintiff raised two arguments in his initial brief. In his reply brief he indicates that he is withdrawing one argument. Thus, this Court will discuss only the remaining argument.

7

the disability programs under the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987).

The Seventh Circuit Court of Appeals has "stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity…." *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). The reason for the rule is to ensure that the VE does not refer to jobs that the applicant cannot do because the expert did not know the full range of the applicant's limitations. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

Plaintiff points out that there is evidence to support the ALJ's finding that Plaintiff has a mild limitation in interacting with others. In March 2018, psychiatrist Kathleen Miller, M.D., evaluated Plaintiff. (Tr. 477-84). Plaintiff said there were times when he would be awake for four days and would be afraid to leave his home. (Tr. 477). He said that when he was awake, he had racing thoughts, tangential speech, was very talkative, and his girlfriend had to redirect him to the topic of conversation. (*Id*.). He said that he shopped only on Mondays or Tuesdays at 1:00 a.m. (*Id*.). He said that he believed that he was always being watched at night, despite having covered the windows and having a privacy fence. (*Id*.).

Dr. Miller wrote that on mental status examination, Plaintiff's thought content was about suspicion. (Tr. 479). Under "mood," Dr. Miller wrote, "loss of energy, tearfulness, dysphoric, feeling worthless, irritable, loss of interest/pleasure." (Tr. 480).

Also, state-agency psychologists William Shipley, Ph.D., and B. Randal Horton, Psy.D., found that Plaintiff has mild limitations in interacting with others. (Tr. 260, 270). The ALJ found those opinions "generally persuasive." (Tr. 35).

Although the ALJ found that Plaintiff has mild limitations in interacting with others (Tr.

8

32), neither the RFC (Tr. 32-33) nor the hypothetical questions to the VE (Tr. 66-68) included that limitation or any limitation that would account for Plaintiff's difficulty interacting with others.

Plaintiff does not contend that a non-severe limitation, by itself, prevents an individual from functioning satisfactorily. Plaintiff also recognizes that a non-severe limitation, even in combination with other severe impairments, does not necessarily prevent an individual from working. However, a non-severe impairment may be enough, when combined with other severe and non-severe impairments, to be the difference between an individual who is able to sustain full-time, competitive employment and one who is not. *Goins*, 764 F.3d at 681 ("We keep telling [SSA's ALJs] that they have to consider an applicant's medical problems in combination [citations omitted]. Like most obese people, the plaintiff can walk. Her obesity is not disabling in itself. But it is an added handicap.")

When the entire ALJ decision hinges on the validity of the ALJ's hypothetical questions, and the hypothetical questions are fundamentally flawed because they do not include all of the limitations supported by medical evidence in the record, "the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young*, 362 F.3d at 1005.

Plaintiff informs the court that each of the occupations used to deny Plaintiff's claim requires significant interaction with others. The Dictionary of Occupational Titles describes them as follows:

**Furniture-Rental Consultant, DOT 295.357-018**

Rental clerk, furniture. Rents furniture and accessories to customers: Talks to customer to determine furniture preferences and requirements. Guides or accompanies customer through showroom, answers questions, and advises

9

customer on compatibility of various styles and colors of furniture items. Compiles list of customer-selected items. Computes rental fee, explains rental terms, and presents list to customer for approval. Prepares order form and lease agreement, explains terms of lease to customer, and obtains customer signature. Obtains credit information from customer. Forwards forms to credit office for verification of customer credit status and approval of order. Collects initial payment from customer. Contacts customers to encourage followup transactions. May visit commercial customer site to solicit rental contracts, or review floor plans of new construction and suggest suitable furnishings. May sell furniture or accessories.

**Investigator, Dealer Accounts, DOT 241.367-038**

Visits dealers to verify purchases financed by bank against physical inventory of merchandise: Reviews computer printouts listing customer names, addresses, and descriptions of merchandise finances through bank credit and chattel mortgage accounts to plan itinerary of unannounced visits to dealer premises. Explains purpose of visit and locates merchandise in areas, such as showroom, storage room, or car lot. Observes features of merchandise, such as size, color, model, and serial number, to verify item against computer printout. Examines records and questions dealer to determine disposition of items missing from inventory and to elicit information on dealer arrangement for payment to bank for merchandise sold. Records findings on printout and notifies supervisor of unusual findings.

**Ticket Taker, DOT 344.667-010**

Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issues. Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire. May direct patrons to their seats. May distribute door checks to patrons temporarily leaving establishment. May count and record number of tickets collected. May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file? May be designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event.

Plaintiff contends that even mild difficulties interacting with others would affect an individual's ability to perform these occupations on a sustained basis and, thus, his mild limitations in interacting with others, as found by the ALJ, should have been included in the RFC and in the hypothetical to the ALJ.

10

This Court agrees with Plaintiff.  The record shows, and the ALJ found, that Plaintiff is distressed by simply shopping in a grocery store.  The average grocery store trip likely takes less than half an hour.  Yet the ALJ expects Plaintiff to be able to work full-time at jobs such as Furniture Rental Consultant which requires nearly constant interaction with customers, and Ticket Taker which requires being in large crowds at entertainment events.  Even the Investigator, Dealer Accounts job involves visiting dealers and questioning them.  If Plaintiff's RFC had included accommodation for his mild limitation in interacting with others, and the VE properly informed of all of Plaintiff's limitations, these jobs likely would not have been listed as jobs Plaintiff could perform.  Which in turn could have required a finding of disability.

Thus, remand is required so that the ALJ may properly assess Plaintiff's mental RFC.

Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: January 18, 2022.

s/ William C.  Lee
William C. Lee, Judge
United States District Court